IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT
MAY 14 2007
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:07cr140 |
| ) | |
| CHRISTOPHER E. EAVES, ) | |
| a/k/a "CEAVES," ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

Were the United States to proceed to trial in this case, it would provide testimonial and documentary evidence to prove beyond a reasonable doubt that, from approximately 2000 through approximately April 2004, defendant CHRISTOPHER E. EAVES (the "Defendant") did conspire and agree, in the Eastern District of Virginia and elsewhere, to violate the laws of the United States, in violation of Title 18, United States Code, Section 371, specifically to violate the federal criminal copyright laws, Title 18, United States Code, Section 2319(b)(1) and Title 17, United States Code, Section 506(a)(1). Specifically, the Defendant conspired and agreed to willfully infringe more than 10 copies of one or more copyrighted works with a total retail value of more than $2,500 in a 180 day period, for purposes of private financial gain, with others, including but not limited to Mark Shumaker, also known by his screen nickname "MARKALSO." Specifically, the testimonial and documentary evidence would establish, at a minimum, the following facts:

1.      Beginning in approximately 2000 and continuing until approximately April 2004, the Defendant was a member of an Internet music release group known as "aPC" or "Apocalypse

Crew." Apocalypse Crew was a "warez" organization[1] that specialized in the unauthorized distribution of copyrighted music over the Internet. Among other things, aPC sought to acquire digital copies of songs and albums before their commercial release in the United States; these songs or albums were then distributed by aPC members, in MP3 format, to Internet sites worldwide. The supply of such pre-release music was often provided by music industry insiders, such as radio DJs, employees of music magazine publishers, or workers at compact disc manufacturing plants, who frequently receive advance copies of songs prior to their commercial release.

2. Discussions within aPC were conducted in closed, invite-only Internet Relay Chat ("IRC") channels. Members of aPC rarely, if ever, used their real names in group communications. Many of the other aPC members with which the Defendant conspired were often known to the Defendant only by their screen nicknames. Despite the lack of personal information about the other individuals with which he was conspiring, the Defendant did reach an agreement or come to an understanding with them to violate the federal copyright laws.

3. Using the screen nickname "CEAVES", the Defendant was a participant in aPC. The Defendant acknowledges that he voluntarily and intentionally joined the aPC conspiracy. The Defendant was aware of the unlawful purpose of aPC.

4. The Defendant acted as a "ripper" for aPC. As a "ripper," the Defendant converted music, including copyrighted works from the compact disc format to a compressed format (i.e., MP3) in order to allow the works to be distributed by others in the group. The Defendant uploaded

---

[1] "Warez" or "pirated software" are terms used to describe digital copies/reproductions of copyright-protected computer software, games, movies, and music that are distributed and traded over the Internet in violation of copyright law. The "warez scene" refers to the complex web of both informal and formal Internet communication, distribution, and trading channels used by individuals who engage in this form of software piracy.

over the Internet more than 10 digital copies of commercially released copyrighted works. The Defendant did these uploads to receive sufficient credit to remain an active member of aPC and, as a result of this membership, received access to a vast quantity of infringed copyrighted works.

5. The Defendant admits that his actions included uploading of infringing items, within the meaning of §2B5.3(b)(2) of the applicable <u>Federal Sentencing Guidelines.</u>

6. The Defendant downloaded over the Internet more than 10 copies of digital copyrighted works during his involvement with aPC. These works included application and utility software titles, movies, music files, and videogames. These downloads were not authorized by the owners of the copyrighted works and were clearly marked by the groups responsible for their initial reproduction and distribution. Although the Defendant did not engage in the commercial sale of copyrighted works, he did receive "personal financial gain" within the meaning of the criminal copyright statute, <u>see</u> 17 U.S.C. §§ 101 & 506(a)(1) and the <u>Federal Sentencing Guidelines</u> § 2B5.3, Application note 1, in that he received, and expected to receive, access to other copyrighted works at no cost.

7. As part of the aPC conspiracy, copyrighted works were transferred to the group from a computer server in the Eastern District of Virginia between March and October 2001.[2] Mark Shumaker used his access to the Fatal Error computer server to reward members of aPC with infringing copyrighted works for their involvement in aPC.

8. Defendant acknowledges that, through the aforementioned acts and others, he did willfully enter into an agreement with one or more individuals for the express purpose of unlawfully

---

[2] The "Fatal Error" computer server was installed at the computer facilities of an Internet Service Provider located in Dulles, Virginia between on or about March 3, 2001 until on or about October 25, 2001.

reproducing and distributing copyrighted materials via the Internet. The Defendant also acknowledges that he did so knowing of the unlawful nature of the activity, and through the aforementioned acts and others, acted in furtherance of such agreement in an effort to carry out or accomplish the object of the conspiracy. Defendant also acknowledges that, through the acts of himself and others in the conspiracy, aPC caused the reproduction and distribution over the Internet of more than 10 copies of copyrighted works within a 180-day period having a total retail value of more than $2,500.

9. On or about September 22, 2004, FBI agents executed a search warrant at the Defendant's residence located in Iowa Park, Texas. The Defendant was cooperative, and he voluntarily submitted to an interview by the FBI agents in which he detailed his involvement with aPC. He also consented to searches of the vehicles located at his residence, as well as his place of business. Agents seized computers, a large collection of audio and video discs, and related equipment from these locations. Forensic analysis of the materials seized revealed significantly more than 10 copies of infringing copyrighted works.

10. The government believes that the Defendant has fully cooperated with investigators. At the government's request, the Defendant voluntarily participated in a video teleconference with FBI agents and the Special Assistant U.S. Attorney on this matter and provided all of the information he knew about his involvement in aPC and the involvement of other members. The government believes that he fully and truthfully answered all of the government's questions. Nevertheless, due to the Defendant's lack of detailed knowledge concerning the identities of aPC's other members or members of affiliated groups, the government has determined that the information it received from the Defendant was not substantial enough to warrant a recommendation of a downward departure

pursuant to Section 5K1.1 of the Sentencing Guidelines and Policy Statements, or any reduction of sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.

11. The Defendant admits that aPC caused more than $30,000 but less than $70,000 in infringement of copyrighted works during his voluntary and active involvement with the conspiracy.

12. The Defendant and government agree to recommend to the Court that the infringement amount under the provisions of §2B5.3(b)(1) of the applicable <u>Federal Sentencing Guidelines</u> attributable to aPC should be more than $30,000 but less than $70,000.

                                                           Respectfully submitted,

                                                           Chuck Rosenberg
                                                           United States Attorney

By: _____
                       Jay V. Prabhu
                       Special Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, CHRISTOPHER EAVES, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 5-14-07                                                     _____
                                                               CHRISTOPHER EAVES
                                                               Defendant

I am CHRISTOPHER EAVES's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 5/14/07

David O'Brien, Esquire
Counsel for CHRISTOPHER EAVES