IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1: 07cr140 |
| | ) | |
| CHRISTOPHER ELLIS EAVES | ) | The Honorable Leonie M. Brinkema |
| | ) | |
| Defendant. | ) | Sentencing: August 10, 2007 |
| | ) | |

POSITION OF CHRISTOPHER ELLIS EAVES WITH RESPECT TO
SENTENCING FACTORS

Defendant Christopher Eaves' involvement in this matter warrants a role reduction under the Sentencing Guidelines. Eaves would also ordinarily have qualified for either a 5K1.1 or Rule 35 sentence reduction based upon the information that he provided to the Government about one of the aPC conspiracy leaders. Because of the difficulty the Government faces in extraditing this individual from the United Kingdom, it is unable to prosecute him and, therefore, unwilling or unable to make the appropriate motion. The Court should nevertheless take that cooperation into account in determining an appropriate sentence. Finally, the factors set forth in 18 U.S.C. § 3553 will be sufficiently satisfied by a sentence that does not include a term of imprisonment.

Factual Background

Christopher Eaves' participation in the aPC conspiracy was modest.  In essence, the aPC group offered access to a cache of copyrighted materials to those who could contribute to that cache.  Eaves was given access to the materials and he used them but he made almost no contribution to the supply.  The group was interested in pre-release or hard to get materials and Eaves had neither.   His went through the motions of posting some music to the site in order to maintain his membership but nobody was interested in his contributions.

Eaves first began to download music through aPC  when he visited its "bots" sites.  "Bots" is slang for internet robots and refers to software applications that perform automated tasks much more quickly than humans can. The  "bots" ran on chat sites that were open to the public and anyone who could find them on the internet could download music through them.  There was no user name or password required.

Eventually, copyrighted music and other material moved to File Transfer Protocol ("FTP") sites that required user names and passwords in order to enter and download.  The good aPC  "rippers", i.e., those people with access to pre-release material who uploaded it onto the internet, left and started their own group.  Because of the reputation that the old aPC "rippers" had for pre-release access, one of the new aPC leaders, Mark Shumaker, used aPC "rippers" from the old 2000 group to create a new aPC group.  It was this group with which Eaves developed a relationship.  Although this aPC group still had a name because of the reputation of its "rippers", it did not have the same pre-release material that it once did.

As noted, Eaves did not have access to pre-release materials so he was not important to the group. The group leaders threatened to prevent him from accessing its sites because he didn't "rip" anything. He was told on more than one occasion that he could no longer belong to the group because he wasn't making any contributions to the aPC sites. He was able to maintain access only because he became friends though email communication with a United Kingdom citizen named Paul Davis who eventually took over the administrative duties for aPC. Davis had the ability to add or delete users from the aPC sites and he permitted Eaves to maintain his access despite his inability to offer the site any new music or movies. When Eaves was interviewed, he provided the investigators with substantial evidence of Davis' conduct but the government has not been able to extradite Davis, and is, therefore, not making a motion for a substantial assistance departure. Nonetheless, Eaves' substantial cooperation and assistance is undisputed.

<u>Role Reduction</u>

Eaves did download music, video games and dvds from the aPC site and he understands that it was illegal for him to do so without paying for these materials, but his involvement in the group clearly qualifies him for a role reduction. USSG § 3B1.2 provides for a decrease in a defendant's offense level of 4 levels if he was a minimal participant in the criminal activity, of 2 levels if he was a minor participant and of 3 levels if his participation falls in between these categories.

Application Note 4 to USSG § 3B1.2 provides that the "minimal participant" category is "intended to cover defendants who are plainly among the least culpable

of those involved in the conduct of a group." Application Note 5 explains that the "minor participant" role applies to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal."

In determining if a defendant is entitled to a mitigating role adjustment, the Court should not only compare the defendant's culpability to that of the others, it should also measure it against the elements of the offense. *United States v. Reavis*, 48 F.3d 763, 769 (4th Cir. 1995). Whether a defendant merits a mitigating role adjustment depends on "not just whether the defendant has done fewer 'bad acts' than his co-defendants, but whether the defendant's conduct is material or essential to committing the offense." *United States v. Pratt*, 239 F.3d 640, 646 (4th Cir. 2001).

As the government noted in its Statement of Facts, aPC was a "pre-release" group that "sought to acquire digital copies of songs and albums before their commercial release." The group relied on "music industry insiders… such as radio DJs, employees of music magazine publishers, or workers at compact disc manufacturing plants." In its heyday, the aPC group's reputation rested on the ability of its "rippers" to obtain what others could not. Chris Eaves contributed nothing to the group's reputation. He did not have access to pre-release material and was frequently threatened with expulsion because of his failure to "rip". Chris' conduct was neither material nor essential to the commission of the offense. If the aPC group had depended on Chris' "ripping," it would have come to an abrupt end. Chris is the quintessential "minimal participant" and his offense level should be reduced by 4 to a level 9 and a guideline range of 4 to 10 months.

<u>Application of 18 U.S.C. § 3553</u>

The factors set forth in 18 U.S.C. §3553 warrant a sentence lower than that called for under the applicable guideline sentencing range.

<u>Mr. Eaves' Background</u>

Chris is 31 years old and the primary breadwinner for his wife and two young children. Chris works as a maintenance craftsman in a factory in his hometown. He's been employed there for over 10 years and works the 7:00 P.M. to 7:00 A.M. shift. He's well regarded by his employer. He has no prior criminal record. He attributes his involvement with the aPC group to his interest in music and to his being up in the middle of the night on his days off from work. It was during the middle of the night when there was little else to do that he engaged in online chat-room conversations that led him to the sites where he could download music.

When the FBI executed a search warrant at his residence in September 2004 he cooperated completely and answered all their questions. He voluntarily participated in a video-conference with the FBI and U.S. Attorney's Office a year and a half later in which he provided substantial information about the group and its leaders.

A jail sentence for Chris would jeopardize his job and his ability to support his family. It would also be inconsistent with most of the other sentences that have been imposed for similar, and in many instances, more substantial misconduct. One of the §3553 factors to be considered by the Court in fashioning a sentence is the "need to avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct".  Most of the other defendants from the aPC conspiracy cases have not been sentenced to jail.  The purposes set forth in 18 U.S.C. §3553(a)(2) will be satisfied by period of probation for Chris.  Downloading of music on the internet without permission of the copyright owners may not have been clearly understood to be a violation of the law in the early days.  Those days are past.  The law is now understood and respected.  Jailing Chris will not enhance that respect in any measurable way.  The goal of deterrence will also not be appreciably advanced beyond what the multiple felony convictions have already achieved.  Chris and many of the others who engaged in this conduct were previously law abiding.  None of them contested their guilt when they were charged, and it is now highly unlikely that others who may be disposed to take advantage of free music on the internet will follow that impulse in the face of the aPC prosecutions.  These felony convictions are a high price to pay and will undoubtedly deter people who are already disinclined to break the law from doing so.  Finally, with regard to the purpose of education and vocational training, Chris fortunately already has a trade and good job.  It really would make little sense to impose the cost of  incarceration and further education on the tax payers.

<u>Conclusion</u>

Sentencing Chris to jail is not necessary to achieve the purposes set forth in 18 U.S.C. § 3553.  Probation is sufficient to satisfy those purposes and can be imposed with only a slight deviation from the sentencing guidelines' advisory range.

Chris asks the Court to allow him to keep his job and continue to support his family by placing him on probation.

Respectfully submitted,


_____/s/_____
David W. O'Brien
Crowell & Moring, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone:  202-624-2500
E-Mail: DObrien@crowell.com

Counsel for Defendant Eaves

<u>CERTIFICATION OF SERVICE</u>

I caused a copy of the foregoing Position on Sentencing Factors to be sent electronically to Jay V. Prabhu, U.S. Attorney's Office, 2100 Jamieson Avenue, Alexandria, VA 22314.

_____/s/_____
David W. O'Brien